Thomas C Souran
Pro Se
108 Harris, #F
East Peoria, Illinois 61611
972-343-8679
tcsouran@exchequergroup.com



United States District Court for the Central District of Illinois

Thomas C Souran,

    Plaintiff,

vs.

Square, Inc, Caviar, Inc., Doug Hall an individual.

    Defendants

Case No.: 17-1197

**COMPLAINT, BREACH OF CONTRACT AND INTERFERANCE WITH BUSINESS CONTRACT**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. Thomas C Souran, Plaintiff ("Souran") brings this cause of action against Caviar Inc. and Square, Inc.(together referred to as "Square"). Caviar is a food delivery service that employs delivery drivers who can be scheduled and dispatched through a mobile phone application or through Caviar website and

who deliver food orders from restaurants to customers at their homes and businesses.

2. As described further below, Caviar has misclassified Souran as independent contractors and, in so doing, has committed wage and hour violations under a variety of federal and state statutes, including: (1) the federal Fair Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; (2) the Illinois Minimum Wage Law,

## II. PARTIES AND JURISDICTION

3. Plaintiff Thomas Souran is an adult resident 108 Harris Road, #F East Peoria, Illinois. Mr. Souran worked as a delivery driver for Caviar in Chicago, Illinois, from approximately August 2015 to March 2017.

4. Defendants Caviar Inc. and Square, Inc.(together "Caviar") are Delaware Corporations with their principal place of business 1455 Market Street, Suite 600, San Francisco, California 94103 they also maintain an office at 1165 North Clark Street, Chicago, Illinois, Defendant Doug Hall, ("Hall") works out of this office.. Defendants run a business that provides food delivery services throughout the country.

5. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Souran have brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. This Court has supplemental jurisdiction over the state law claims pursuant to 29 U.S.C. § 1367.The Central District of Illinois is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs Souran worked for Cavair in Chicago, Illinois.

6. Square, Inc., Caviar, Inc., have done business with residents in Illinois.

7. ***Illinois v. Hemi Group, LLC***, 622 F.3d 754 (7th Cir. 2010), was a personal jurisdiction case in which the United States Court of Appeals for the Seventh Circuit affirmed the United States District Court for the Central District of Illinois' ruling finding personal jurisdiction based on Internet transactions.

8. This Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and has authority under 42 U.S.C.§ 1988 to award attorney fees and costs to successful plaintiffs.

COMPLAINT, BREACH OF CONTRACT

AND INTERFERANCE WITH BUSINESS

CONTRACT

JURY TRIAL DEMANDED - 3

## ARBITRATION CLAUSE

9. In the attached Drivers Agreement there is a clause to submit any claim to Arbitration.

10. Plaintiff asserts that Seventh Cuircuit decision in **Lawis v Epic Sys. Corp.**, 823 F.3d 1147 (7th cir 2016), **cert granted**, (U.S. Jan 13, 2017), the court found that the case could go forward and that the Arbitration Clause denied Plaintiff the ability to file a claim and seek damages. The court found that the clause was not legal.

## III. STATEMENT OF FACTS

11. Caviar is a business that provides food delivery service to customers in cities throughout the country via an on demand dispatch system.

12. Caviar offers customers the ability to request a food delivery on a mobile phone application or online through its website.

13. Caviar delivery drivers fulfill these food delivery orders by traveling to the requested restaurant, picking up the customer's food order, and then delivering the order to the customer at their home or business.

14. Although classified as independent contractors, Caviar delivery drivers are employees under federal and state law. Caviar directs

COMPLAINT, BREACH OF CONTRACT

AND INTERFERANCE WITH BUSINESS

CONTRACT

JURY TRIAL DEMANDED - 4

drivers' work in detail, instructing drivers where to report for their shifts, how to dress, and where to go to pick up or await deliveries. Drivers are required to follow requirements imposed on them by Caviar regarding handling of the food and timeliness of the deliveries.

16.. In addition Caviar is in the business of providing food delivery services to customers, and this is the very service its drivers provide. The drivers' services are fully integrated into Caviar's business, and without the drivers, Caviar's business would not exist.

17. Caviar drivers are generally paid through a flat fee for each delivery completed plus gratuities added by customers .

18. Caviar drivers work on scheduled shifts (such as blocks of 1 hour,). While drivers are on shift, they must stay within an area assigned by Caviar and must remain available to accept delivery assignments.

19. During their shifts, drivers are frequently contacted by dispatchers who instruct them on what they need to be doing and where they need to be. If the drivers did not follow the dispatchers' instructions, they will not receive job assignments, or their shifts will be cancelled. The drivers also risk termination if they do not adhere to the dispatchers' instructions.

20. During their shifts, drivers are typically assigned at least two to four delivery jobs per hour. Delivery assignments can typically take between thirty minutes and an hour and a half to complete.

21. Drivers are required to accept job assignments during their shifts. If a driver's job acceptance rate falls below what Caviar deems acceptable, Caviar may terminate the driver. Daily Caviar sends to the driver scheduling reliability percentage that they monitor the drivers reliability and may be used to terminate drivers at will. Frequently drivers receive multiple job assignments at the same time and so cannot always accept all of them. However, in order to avoid being terminated, they must accept as many assignments as possible.

23. While on shift, drivers are required to remain in their cars or very near to their cars in the zone that Caviar has designated so that they can be ready to take the next delivery assignment.

24. Additionally, when Caviar assigns a delivery to a driver, Caviar requires the driver to arrive at the restaurant by a designated time or risk being terminated. Thus, as a practical matter, the delivery drivers must remain in or very near to their cars at all times during their shifts

so that they can reach the restaurant on time when a delivery job is assigned.

25. Given the frequency and duration of delivery assignments while driversare on shift, as well as the requirement that the drivers be in or very near to their cars at all times during their shifts, the drivers as a general matter cannot engage in personal non-work activities during their Caviar shifts.

26. As a result, drivers are working throughout their entire shifts and this time is all compensable under federal and state wage standards.

27. Drivers bear their own expenses, including the cost of fuel and the cost of owning or leasing, and maintaining their vehicles, as well as cellular data costs.

28. Because drivers are paid by the delivery, and have been required to pay expenses necessary to do their job (including the cost of fuel and the cost of owning or leasing, and maintaining, their vehicles, and cellular data costs), their weekly pay rates have fallen below federal and state minimum wage in many weeks.

29. Also, drivers have regularly worked more than forty hours per week,

COMPLAINT, BREACH OF CONTRACT

AND INTERFERANCE WITH BUSINESS

CONTRACT

JURY TRIAL DEMANDED - 7

but Caviar does not pay drivers overtime wages (time-and-a-half the regular rate) for these hours.

30. For example, between December 2015 and March 2017, Plaintiff Souran regularly worked fifty hours per week, but Caviar has not paid him overtime wages (time-and-a-half the regular rate) for the hours he worked in excess of forty hours per week.

31 On or about March 04, 2017 Plaintiff Souran accepted an delivery for RPM restaurant, a Lettuce Entertainment restaurant. During the wait for the delivery Plaintiff Souran was talking with another Caviar driver. Souran mentioned he had his dog with him, a regular occurrence for the previous six months. The Hostess overheard the conversation and asked if Souran had his dog, Souran answered affirmatively.

32 During the delivery Souran received a text from Caviar dispatch that they received a call from RPM and it was reported that Souran had his dog with him and they did not want to allow Souran to deliver for them. This interfered with the contractual agreement between Souran and Caviar.

33. Immediately after this text Caviar Dispatch cut off Sourans

delivery application and texting ability. Caviar Dispatch texted that Souran was not to enter the offices of Caviar and Square in Chicago nor contact anyone that Caviar will reach out.

34. On or about March 04, 2017 Defendant Hall sent an e mail to Souran not terminating him but pointing out the alleged violation. Defendant Hall refused and still refuses to reactivate and reinstate Plaintiff Souran's applications to allow Souran to work even though the e mail received from Hall stated they would work to get Souran reinstated.

35. Souran was scheduled to work 11 hours over the weekend of March 4, 2017. Through Caviars actions they denied Souran the ability to earn money or qualify for the bonus structure they have offered.

36. These actions has caused Souran undue economic hardship.

37. Souran sent an e mail to Defendant Hall asking for an explaintition and pointing out that there was never a problem with Souran's picking up orders, delivery of the order marinating or the quality of the food delivered. Hall has refused to respond to the e mail nor reinstate Souran's ability to deliver and make a living.

38. Defendants actions is in violation of 11.2 of the driver agreement not

giving Souran a 14 written notice of termination.

## COUNT I

### FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA

39. Souran repeats and re-alleges the allegations contained in paragraphs 1 through 38 as if fully restated here.

40. Caviar's conduct in failing to pay Souran time-and-a-half their regular rate for all hours worked in excess of forty per week violates the FLSA, 29 U.S.C. § 207. Caviar's violation of the FLSA has been willful in that it knew or showed reckless disregard for whether its actions were unlawful under the FLSA.

## COUNT II

### FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA

41. Souran repeats and re-alleges the allegations contained in paragraphs 1 through 40 as if fully restated here.

42. Caviar's conduct in failing to pay Souran the federal minimum wage (including its practice of requiring its drivers to bear expenses such as fuel, vehicle maintenance, and cell phone data, which has caused

Sourans' weekly compensation to fall below the federal minimum wage), violates the FLSA, 29 U.S.C. § 206. Caviar's violation of the FLSA has been willful in that it knew or showed reckless disregard for whether its actions were unlawful under the FLSA.

## COUNT III

### FAILURE TO PAY OVERTIME IN VIOLATION OF ILLINOIS MINIMUM WAGE LAW

43. Souran repeats and re-alleges the allegations contained in paragraphs 1 through 42 as if fully restated here.

44. Plaintiffs Souran brings this claim pursuant to Fed. R. Civ. P23. Caviar has violated the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, by knowingly and willfully failing to pay Souran time-and-a-half his regular rate for all hours worked in excess of forty per week.

## COUNT IV

### FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF ILLINOIS MINIMUM WAGE LAW

45, Souran repeats and re-alleges the allegations contained in paragraphs 1 through 44 as if fully restated here.

46. Souran bring this claim pursuant to Fed. R. Civ. P. 23

who worked in Illinois. Caviar has violated the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, by knowingly and willfully failing to pay Souran the Illinois state minimum wage for all hours worked, as they were required to bear the expenses of their work such as fuel costs, vehicle maintenance costs, and cell phone data costs.

## COUNT V

## BREACH OF CONTRACT

47. Souran repeats and re-alleges the allegations contained in paragraphs 1 through 47 as if fully restated here.

48. Under Illinois law, the elements for a breach of contract claim are: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 669 (Ill. App. Ct. 2004).

49. Since there is a written contract the obligation of good faith and fair dealing — which is inherent in all contracts — applies. *Martindell v. Lake Shore Nat'l Bank,* 154 N.E.2d 683, 690 (Ill. 1958). Caviar and Hall through there actions and terminating the contract without the 14 day

required notice not only breached the contract but violated the obligation of good faith and fair dealing.

### Tortious Interference with Contractual and Business Relations

50. Souran repeats and re-alleges the allegations contained in paragraphs 1 through 49 as if fully restated here

51. By signing the contract on August 04, 2015 Souran has established enforceable contract of which the defendant had knowledge, and the defendant's intentional interference inducing a breach by a party to the contract, resulting in damages." *TABFG, LLC v. Pfeil,* 746 F.3d 820, 823 (7th Cir. 2014).

**WHEREFORE,** Plaintiff requests that this Court enter the following relief:

1. Find and declare that Caviar and Hall violated the following statutes: the federal Fair Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; (2)the Illinois Minimum Wage, 820 ILCS 105/1, *et seq*

2. Award compensatory damages, including all wages owed, in an amount according to proof;

3. Award to Souran a minimum of $20,000 for lost wages from time of the breach to time of filing this action.

4. Award all costs and attorney's fees incurred prosecuting this claim;

5... Award liquidated damages and all appropriate statutory and regulatory damages;

6.. Interest and costs;

7.. Injunctive relief in the form of an order directing Square, Inc., and Caviar, Inc to comply with the FLSA, Illinois state law.

8. A minimum of four (4) times of any monatery award for punitive damages.

9. Any other relief to which Plaintiff are entitled to;

Dated this 01 of May 2017

_____
Thomas C. Souran – Pro-se